IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


MICHAEL HUTCHINSON,                )
                                   )
                Plaintiff,         )
                                   )
vs.                                )     Case No. 07-1293-MLB
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of                    )
Social Security,                   )
                                   )
                Defendant.         )
_____)


RECOMMENDATION AND REPORT


     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties and has been
referred to this court for a recommendation and report.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the

1

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

     The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial

2

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled.  If the claimant survives step four, the fifth
and final step requires the agency to consider vocational factors
(the claimant's age, education, and past work experience) and to
determine whether the claimant is capable of performing other
jobs existing in significant numbers in the national economy.
Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of
the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993).
At step five, the burden shifts to the Commissioner to show that
the claimant can perform other work that exists in the national
economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987
F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this
burden if the decision is supported by substantial evidence.
Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will
assess the claimant's residual functional capacity (RFC).  This
RFC assessment is used to evaluate the claim at both step four
and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

**II.  History of case**

On March 29, 2007, administrative law judge (ALJ) Robert J.
Burbank issued his decision (R. at 16-24).  Plaintiff alleged
disability beginning November 1, 2004 (R. at 16).  Plaintiff
meets the insured status requirements of the Social Security Act
through December 31, 2007 (R. at 18).  At step one, the ALJ found

4

that plaintiff has not engaged in substantial gainful activity
since November 1, 2004, the alleged onset date (R. at 18).  At
step two, the ALJ found that plaintiff had the following severe
impairments: Type I Diabetes Mellitus and status post right tibia
fracture (R. at 18).  At step three, the ALJ determined that
plaintiff's impairments do not meet or equal a listed impairment
(R. at 19).  After determining plaintiff's RFC (R. at 19), the
ALJ found at step four that plaintiff could not perform past
relevant work (R. at 23).  At step five, the ALJ found that
plaintiff could perform a significant number of jobs in the
national economy (R. at 23-24).  Therefore, the ALJ concluded
that plaintiff was not disabled (R. at 24).

**III.  Did the ALJ err in his analysis of the opinions of Dr.
Morris, plaintiff's treating physician?**

The opinions of physicians, psychologists, or psychiatrists
who have seen a claimant over a period of time for purposes of
treatment are given more weight over the views of consulting
physicians or those who only review the medical records and never
examine the claimant.  The opinion of an examining physician is
generally entitled to less weight than that of a treating
physician, and the opinion of an agency physician who has never
seen the claimant is entitled to the least weight of all.
Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  A
treating physician's opinion about the nature and severity of the

5

claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion. If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

6

An ALJ must evaluate every medical opinion in the record, although the weight given to each opinion will vary according to the relationship between the disability claimant and the medical professional.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  In the determination of issues reserved to the Commissioner, such as opinions regarding: whether an impairment meets or equals a listing, plaintiff's RFC, whether a plaintiff can do past relevant work, how age, education, and work experience apply, and whether a plaintiff is disabled, treating source opinions are not entitled to special significance or controlling weight.  Soc. Sec. Rul. 96-5p, (Medical Source Opinions on Issues Reserved to the Commissioner), 1996 WL 374183, at *2.  However, even on issues reserved to the Commissioner, including the RFC determination and the ultimate issue of disability, opinions from any medical source must be carefully considered and must never be ignored.  Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3.

Dr. Terry Morris was plaintiff's treating physician from 2004-2007 (R. at 220-225, 269-295).  On February 19, 2007, Dr. Morris filled out a medical source statement-physical.  Dr. Morris opined that plaintiff could stand and/or walk for less than 1 hour in an 8 hour day, and could sit for 1 hour or less in an 8 hour day.  He also opined that plaintiff had a limited ability to push and/or pull due to leg and lower back pain (R. at

7

310).  He opined that plaintiff could never climb, balance,
crouch, or crawl, and could only occasionally stoop and kneel.
He believed plaintiff should avoid any exposure to a wide range
of environmental factors.  Dr. Morris indicated that plaintiff
needed to lie down every 30 minutes due to pain.  He also stated
that plaintiff's Lortab medication caused some reduction in
concentration, persistence or pace and even occasional memory
loss (R. at 311).  He did not believe that plaintiff was
malingering, and stated that his opinions were based on: (1)
medical history, (2) clinical findings (examinations), (3)
laboratory findings, (4) diagnosis, and (5) treatment prescribed
with response, and prognosis (R. at 311).

     In his decision, the ALJ stated the following in regards to
the above opinions by Dr. Morris:

> Terry Morris, D.O., the claimant's treating
> physician, filled out a Medical Source
> Statement Physical that is consistent with a
> finding of significantly less that sedentary
> exertional ability. However, Dr. Morris
> stated limitations are far beyond those
> supported by the longitudinal record. Dr.
> Morris stated that the claimant could only
> sit for 1 hour and stand for 1 hour during an
> 8 hour workday. Additionallv, Dr. Morris
> stated that the claimant would have to lie
> down every 30 minutes to alleviate symptoms.
> Dr. Morris' opinion is based on the
> subjective complaints of the claimant and is
> not supported by medical signs, laboratory
> results or the claimant's medical history.

(R. at 21).  The ALJ further stated that the opinions of Dr.
Morris were not consistent with the longitudinal record as a

whole, and therefore his opinions were not entitled to
controlling weight.  The ALJ then stated that he was giving
little, if any, weight to the opinions of Dr. Morris (R. at 22).
The ALJ stated that plaintiff had a residual functional capacity
(RFC) that would allow him to sit about 6 hours in an 8 hour
workday and stand and/or walk for 2 hours in an 8 hour workday.
The ALJ further found that plaintiff cannot use ladders, ropes or
scaffolds, and can occasionally crouch, crawl, kneel, stoop and
balance (R. at 19).

The ALJ discounted the opinions of Dr. Morris because his
opinions are "based on the subjective complaints of the claimant
and is not supported by medical signs, laboratory results or the
claimant's medical history" (R. at 21).  However, Dr. Morris
stated that his physical RFC opinions were based on plaintiff's
medical history, clinical findings, laboratory findings,
diagnosis, and treatment prescribed with response and prognosis
(R. at 311).  The medical records of Dr. Morris from February 19,
2007 (the same date Dr. Morris filled out the medical source
statement–physical), stated the following:

> This patient was evaluated. It is noted that
> he still has difficulty in getting about. He
> had significant back pain. He uses a cane to
> get about with and it is obvious that he is
> having discomfort with the lower back and
> extremities, **even while he didn't know he was
> being watched it was noted that he had to
> move and could not sit still for a long
> period of time**. Upon discussion we went
> through the list of ability to move or not

9

> moving and **it became obvious that he was
> limited with his ability to even sit for any
> period of time and even walking he has to lie
> down**. He states he has to lie down a lot
> during the day because of the amount of pain
> be has. He takes Lortab 7.5 and alternates
> between 7.5 and 10. He seems to do fairly
> well with this but he does have some
> nervousness. His neurosis also plays a part
> with it but it is minimal compared to the leg
> and back pain.

(R. at 270, emphasis added).  Dr. Morris also stated in his notes

from this visit that "Extremities revealed the pain of lower

extremities" and "Lower back spasms and tenderness present on

evaluation with restriction in movement" (R. at 270).

In the case of <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1121

(10th Cir. 2004), the court held:

> The ALJ also improperly rejected Dr.
> Hjortsvang's opinion based upon his own
> speculative conclusion that the report was
> based only on claimant's subjective
> complaints and was "an act of courtesy to a
> patient." <u>Id</u>. The ALJ had no legal nor
> evidentiary basis for either of these
> findings. Nothing in Dr. Hjortsvang's reports
> indicates he relied only on claimant's
> subjective complaints or that his report was
> merely an act of courtesy. "In choosing to
> reject the treating physician's assessment,
> an ALJ may not make speculative inferences
> from medical reports and may reject a
> treating physician's opinion outright only on
> the basis of contradictory medical evidence
> and *not due to his or her own credibility
> judgments, speculation or lay opinion*."
> <u>McGoffin v. Barnhart</u>, 288 F.3d 1248, 1252
> (10th Cir.2002) (quotation omitted; emphasis
> in original). And this court "held years ago
> that an ALJ's assertion that a family doctor
> naturally advocates his patient's cause is
> not a good reason to reject his opinion as a

10

treating physician." Id. at 1253.

More recently, in the case of <u>Victory v. Barnhart</u>, 121 Fed. Appx.

819 (10th Cir. Feb. 4, 2005), the court held:

> The ALJ's finding that Dr. Covington's
> opinion was based on claimant's own
> subjective report of her symptoms
> impermissibly rests on his speculative,
> unsupported assumption. <u>See Langley</u>, 373 F.3d
> at 1121 (holding that ALJ may not reject a
> treating physician's opinion based on
> speculation). We find no support in the
> record for the ALJ's conclusion. Nothing in
> Dr. Covington's report indicates that he
> based his opinion on claimant's subjective
> complaints, and the ALJ's finding ignores all
> of Dr. Covington's examinations, medical
> tests, and reports. Indeed, the ALJ's
> discussion of Dr. Covington omits entirely
> his March 22, 2001 examination and report.
> His April 3, 2001 statement might well have
> been based on his recent first-hand
> examination and observation of claimant
> during this examination, performed less than
> two weeks earlier, rather than on claimant's
> subjective complaints, as the ALJ speculated.
> <u>See Morales v. Apfel</u>, 225 F.3d 310, 317 (3d
> Cir.2000) (noting that the treating
> physician's opinion may "reflect expert
> judgment based on a continuing observation of
> the patient's condition over a prolonged
> period of time").

121 Fed. Appx. at 823-824.

The medical source statement-physical filled out by Dr.

Morris indicates that he based his opinions on plaintiff's

medical history, clinical findings, laboratory findings,

diagnosis, and treatment prescribed with response and prognosis

(R. at 311).  There is no indication in the record that Dr.

Morris relied solely or primarily on plaintiff's subjective

complaints when filling out the form.  Dr. Morris had been treating plaintiff from 2004-2007.  Furthermore, on the day Dr. Morris filled out the form, he examined and evaluated the plaintiff in his office.  Dr. Morris stated in his office notes on February 19, 2007 that when plaintiff did not know he was being watched, Dr. Morris observed that plaintiff had to move and could not sit still for a long period of time.  Thus, the limitations that Dr. Morris placed on plaintiff's ability to sit were based on his own observations of plaintiff when plaintiff did not know he was being observed.  Although Dr. Morris acknowledged that he discussed the contents of the form with plaintiff, there is absolutely no indication that Dr. Morris relied solely or primarily on plaintiff's subjective complaints. The court finds no basis in the record that Dr. Morris was not being honest or truthful when he stated that he based his opinions on plaintiff's medical history, clinical findings, laboratory findings, diagnosis and treatment prescribed with response, and prognosis based on three years of treating the plaintiff.  Therefore, as in <u>Langley</u> and <u>Victory</u>, the court finds that the ALJ improperly rejected the opinions of Dr. Morris based on the ALJ's speculative conclusions that the opinions of Dr. Morris were based on plaintiff's subjective complaints.  This case should therefore be remanded in order for the ALJ to properly evaluate the opinions of Dr. Morris.

The court would note that Dr. Morris did not give much explanation for his opinions regarding plaintiff's physical limitations.  In the case of <u>Robinson v. Barnhart</u>, 366 F.3d 1078, Dr. Baca, plaintiff's treating psychiatrist, completed an assessment of the claimant's mental ability to do work-related activities.  Dr. Baca concluded that plaintiff's limitations as set forth in the assessment were severe enough to preclude plaintiff from any employment.  366 F.3d at 1081.  The court held that the ALJ's statement that Dr. Baca's records did not give a reason for his opinion that claimant is unable to work triggered the ALJ's duty to seek further development of the record before rejecting his opinion.  366 F.3d at 1084.  The court further held:

> If evidence from the claimant's treating doctor is inadequate to determine if the claimant is disabled, an ALJ is required to recontact a medical source, including a treating physician, to determine if additional needed information is readily available. See 20 C.F.R. §§ 404.1512(e)(1) and 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."); <u>see</u> <u>also</u> <u>McGoffin</u>, 288 F.3d at 1252 (holding ALJ had obligation to recontact treating physician if validity of his report open to question). The responsibility to see that this duty is fulfilled belongs entirely to the ALJ; it is not part of the claimant's burden. <u>White v. Barnhart</u>, 287 F.3d 903, 908

(10th Cir.2001).

366 F.3d at 1084.  The court in <u>Robinson</u> then stated that if the ALJ concluded that the treating physician failed to provide sufficient support for his conclusions about plaintiff's limitations, the severity of those limitations, the effect of those limitations on her ability to work, or the effect of prescribed medication on her ability to work, the ALJ should have recontacted the treatment provider for clarification of his opinion before rejecting it.  366 F.3d at 1084.  In addition, SSR 96-5p states the following:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

1996 WL 374183 at *6.  Therefore, on remand, the ALJ should consider recontacting Dr. Morris if the ALJ cannot ascertain the basis for Dr. Morris' opinions from the record.

**IV.  Did the ALJ err by not finding that plaintiff's mental impairments were severe?**

The burden of proof at step two is on the plaintiff.  <u>See</u> <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993)(the claimant bears the burden of proof through step four of the

14

analysis).  A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis."  <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1169 (10th Cir. 1997); <u>see</u> <u>Williams v. Bowen</u>, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of medical severity").  A claimant need only be able to show at this level that the impairment would have more than a minimal effect on his or her ability to do basic work activities.[1]  <u>Williams</u>,844 F.2d at 751.  However, the claimant must show more than the mere presence of a condition or ailment.  If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity.  Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work.  <u>Hinkle v. Apfel</u>, 132 F.3d 1349, 1352 (10th Cir. 1997).

A claimant must provide medical evidence that he or she had

---

[1]Basic work activities are "abilities and aptitudes necessary to do most jobs," 20 C.F.R. § 404.1521(b)[416.921(b)], including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." Social Security Ruling 85-28, 1985 WL 56856 at *3.  <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1123 (10th Cir. 2004).

an impairment and how severe it was during the time the claimant alleges they were disabled.  20 C.F.R. § 404.1512(c), § 416.912(c).  The evidence that a claimant has an impairment must come from acceptable medical sources including licensed physicians or psychologists.  20 C.F.R. § 404.1513(a), § 416.913(a).  Evidence from other medical sources, including therapists, nurse-practitioners, and physicians' assistants, may be used to show the severity of an impairment and how it affects the ability to work.  20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).

The ALJ found that plaintiff's mental impairments did not constitute a severe impairment.  The ALJ relied on a consultative examination report by Dr. Mintz, in which Dr. Mintz concluded that plaintiff appears able to interact adequately with co-workers and supervisors, is able to understand simple and intermediate instructions, and has intact concentration (R. at 19, 227).  The ALJ also relied on the state agency assessment by Dr. Blum and Dr. Warrander who opined that plaintiff had mild restrictions of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, and pace; and no repeated episodes of decompensation of extended duration (R. at 19, 239, 249).  According to the regulations, if a claimant's limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, and pace are none or

16

mild, and plaintiff has had no episodes of decompensation, the agency will generally conclude that a claimant's impairment(s) is not severe, unless the evidence indicates otherwise.  20 C.F.R. § 404.1520a(d)(1) (2007 at 370).  The state agency consultant also included a narrative discussion explaining why he concluded that plaintiff's mental impairments were "nonsevere" (R. at 251).

Plaintiff notes that the medical records show that plaintiff was diagnosed with depression and generalized anxiety disorder on February 7, 2005 (R. at 191).  The treatment records mention psychosis on October 20, 2005 (R. at 295).  The treatment notes on November 21 and 28, 2005 reference bipolar and panic attacks (R. at 288-290).  On May 13, 2006, Dr. Morris indicated that plaintiff's depression was worsening (R. at 287).  Finally, on January 30, 2007, Dr. Morris stated that plaintiff has "some neurosis with borderline psychosis" (R. at 270).

There is no dispute from the medical records that plaintiff had been diagnosed with, and treated for mental impairments. However, plaintiff has the burden of proving that these impairments would have more than a minimal effect on his ability to do basic work activities.  Plaintiff has not provided any medical source opinion that his mental impairments would have more than a minimal impact on his ability to do basic work activities.  By contrast, the ALJ relied on the medical opinion of Dr. Mintz that plaintiff is able to interact adequately with

17

co-workers and supervisors, is able to understand simple and intermediate instructions, and has intact concentration.  The ALJ also relied on the opinions of the state agency medical consultants that his limitations in the functional areas were only mild or none, and therefore did not constitute a severe impairment.  For these reasons, the court finds that the ALJ's determination that plaintiff's mental impairments are not severe is supported by substantial evidence.  However, because this case is being remanded for other reasons, plaintiff will have an opportunity to obtain medical source evidence that his mental impairments would have more than a minimal effect on his ability to do basic work activities.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on May 16, 2008.

s/John Thomas Reid
JOHN THOMAS REID
United States Magistrate Judge

18